UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JOSE F. ANDRADE MUNOZ, | ) No. CV 11-05094-VBK |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly considered the medical evidence of record; and

2. Whether the ALJ properly considered Plaintiff's testimony. (JS at 4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE ALJ DID NOT PROPERLY ASSESS THE OPINIONS**

**OF TREATING AND EXAMINING PHYSICIANS**

In this case, there is a substantial volume of medical information, including reports of examining and treating physicians, and reports of physicians who examined Plaintiff for purposes of his Workers Compensation ("WC") case. Generally, all of this evidence, including the WC information, must be evaluated in the context of a Social Security disability determination. (See Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).

In Plaintiff's case, there is contradictory evidence as to his physical functional abilities. It is the ALJ's duty to review all of these opinions, and, based on this review, to come up with a conclusion as to Plaintiff's Residual Functional Capacity ("RFC"). The ALJ's conclusion with regard to a plaintiff's RFC may or may not adopt in whole the opinion of one medical source; rather, the RFC as defined will represent the ALJ's conclusion as to what is the most compelling and persuasive evidence, from all of the opinions reviewed. The question, however, is how the ALJ gets to this conclusion, and specifically, how he or she articulates it in the Decision. In this

regard there are rules of interpretation which have been set out by the Ninth Circuit. The proverbial "godfather" of these opinions is <u>Lester v. Chater</u>, 81 F.3d 821 (9th Cir. 1995). That opinion sets out a hierarchy of medical sources, beginning with the proposition that the greatest weight is given to treating physicians, then examining physicians, then non-examining physicians. (<u>Id</u>. at 830.) <u>Lester</u> goes further, however, in instructing how an ALJ is to assess contradictory opinions of physicians who may be on an equal level, such as opinions of examining physicians. Here, <u>Lester</u> requires that an opinion of an examining doctor, if contradicted by another doctor, "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id</u>., citing <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).

In a case where examining physicians render contradictory opinions on material issues such as lifting capacity, postural limitations, etc., it would be difficult to conceive of a case in which an ALJ would not even mention an opinion of an examining physician, yet adopt the contrary opinion of another physician. Theoretically, it might be possible that even without mentioning the opinion of the "rejected" physician, a decision might contain analysis which could constitute specific and legitimate reasons to reject that opinion. This is a difficult proposition, however, and one which an ALJ might pursue with the risk that his or her analysis will be later rejected when reviewed, for example, in a District Court case. Indeed, that is exactly the case here.

In discussing his first issue, Plaintiff outlines opinions of various treating, examining and non-examining physicians which were not even mentioned in the ALJ's decision. (<u>See</u> AR at 19-30.) These

include the opinions of Dr. Greenspan, who treated Plaintiff, and rendered an opinion on December 5, 2006 (JS at 5, AR 197-237; 257-295; 556-652); Dr. Fabella, who performed a medical evaluation on July 19, 2006 at the request of the Department of Social Services (JS at 6, AR 526-531); Dr. Danufsky, who conducted the State Agency review (AR 533-538); and Dr. Akmakjian, who did a WC Agreed Medical Evaluation ("AME") on December 21, 2006 (AR 886-894). Finally, there is the opinion of Dr. Moazzaz, who performed an examination on September 27, 2008 at the request of the Department of Social Services. (AR 1009-1013.) Of these opinions, the ALJ only discussed that of Dr. Moazzaz (AR 25), and in addition relied upon examining physician Dr. Guevarra, who examined Plaintiff in February 2009. (AR 25, 1187-1209.)

In defending the ALJ's failure to mention, much less assess, any of the conclusions of the above-named physicians (with the exception of Dr. Moazzaz), the Commissioner takes contradictory positions. First, the Commissioner cites law that the ALJ is not required to discuss evidence that is neither significant nor probative (JS at 9, citing Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1010 (9th Cir. 2003)). This will hardly do, in that it is difficult to visualize a scenario in which a physician's assessment of a person's functional capacities and postural limitations is not significant or probative evidence. Indeed, after devoting scant space to this argument, the Commissioner then makes a second argument, which is that, at least with regard to Dr. Greenspan, the ALJ in fact did not reject that physician's functional limitations. (See AR at 9-10.) With regard to the rest of Dr. Greenspan's opinion, the Commissioner substantiates its implicit discounting by the ALJ by arguing that Dr. Greenspan's opinions were based strictly upon subjective factors relating to

4

disability, and since the ALJ rejected Plaintiff's credibility, that would support the implicit rejection of the rest of Dr. Greenspan's opinion. (AR at 10.)  This argument simply does not hold water.  What the Commissioner is referencing with regard to subjective elements of Dr. Greenspan's analysis, as that term is used, largely concerns an assessment of Plaintiff's pain, which is always a subjective factor, but one which a physician may assess based upon objective evidence.

Aside from these brief and isolated references to Dr. Greenspan's opinion, the Commissioner glosses over the question of whether the ALJ's opinion contains specific and legitimate reasons to reject all the other opinions.  As the Court has rejected the Commissioner's contention that these opinions do not constitute significant and probative evidence, there is little else to support the ALJ's decision.

What the Court is left with, then, is the ALJ's decision which adopts the conclusions of certain physicians, but ignores the conclusions of other physicians on a similar level in the hierarchy, without discussing them.  There is no basis upon which the Court can analyze whether the ALJ's silent rejection of these unmentioned physicians' opinions is supported by specific and legitimate evidence. The case must remanded so that this analysis can proceed according to settled principles.

**II**

**ON REMAND, PLAINTIFF'S CREDIBILITY WILL BE EVALUATED DE NOVO**

A substantial part of the JS is devoted to Plaintiff's complaint that the ALJ improperly rejected his credibility regarding subjective pain.  The Court need not delve into this fully, for several reasons.

5

1  First, the Court's determination with regard to the first issue may
2  have a substantial effect on the credibility determination.  For
3  example, the Court has mandated that the ALJ review and discuss the
4  opinions of various physicians who are unmentioned in the current
5  decision.  The opinions of those physicians in part concern
6  Plaintiff's pain and his functional abilities as related to that pain.
7  As the Court has determined, the ALJ implicitly rejected these
8  opinions without providing specific and legitimate reasons.  On
9  remand, it may be that the ALJ will find to be credible some of those
10 opinions.  If the ALJ credits certain physician opinions with regard
11 to Plaintiff's pain, logically, that might affect the ALJ's
12 determination of the credibility of Plaintiff's own testimony.

13  The Court will however, make certain observations which will be
14 followed in the de novo review.  First, this Court does not accept,
15 per se, a rejection of an individual's credibility because of an
16 alleged pecuniary interest in the individual's own case, as a
17 secondary gain motivation. (See Decision, AR at 27.)  This Plaintiff,
18 as with any other plaintiff, has applied for benefits in order to
19 obtain them. By definition, that is a pecuniary interest. Plaintiffs
20 of course have an interest in getting benefits.  But, in and of
21 itself, that does not constitute a relevant factor in a proper
22 credibility assessment.  For example, if there were evidence that a
23 plaintiff had made a statement to the effect, "I'm not disabled, but
24 I'm going to apply for benefits because I need the money," that
25 clearly would constitute a basis to impeach credibility based upon
26 improper pecuniary motivation.  In any event, as articulated in the
27 current Decision, the pecuniary interest factor does not constitute a
28 proper basis for the credibility assessment.

1     In addition, if there is to be a citation to such things as
2 inconsistent or contradictory statements, they must be specifically
3 identified in the decision, not in a post hoc discussion, such as the
4 Commissioner provides in his portion of the JS. In addition, since
5 Plaintiff will be afforded a new hearing, he will have the
6 opportunity, if he chooses, to explain issues which led to unfavorable
7 credibility conclusions by the ALJ.

8     This matter will be remanded for further hearing on a de novo
9 basis in accordance with this Memorandum Opinion.

10     **IT IS SO ORDERED.**

12 DATED: June 7, 2012           /s/
                                VICTOR B. KENTON
13                                 UNITED STATES MAGISTRATE JUDGE